LÓPEZ & MORÁN, demandante y apelante, *v.* SOBRINOS DE EZQUIAGA, demandada y apelada.

No. 3429.—*Visto:* Febrero 12, 1925.    *Resuelto:* Marzo 31, 1925.

1. VENTAS—OPERACIÓN (*Operation*) Y EFECTO—TRASPASO DE TÍTULOS EN CUANTO A LAS PARTES—BIENES INDETERMINADOS QUE HAN DE SER MANUFACTURADOS. —Bajo un contrato sobre molienda y compraventa de cañas en que se estipula que al colono "se le entregará el azúcar en la factoría, debiendo concurrir el colono a recibirla" no adquiere dicho colono el dominio o propiedad sobre el azúcar mientras no se haga la entrega material o se haya separado por él en los almacenes de la central.

SENTENCIA de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando sin lugar la demanda, con costas.    *Confirmada.*

*Antonio Sarmiento,* Abogado del apelante; *Eduardo Acuña,* Abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

En este pleito se discute cuál pueda ser la naturaleza de la acción que se ejercita pero la demandante-apelante a pesar de imputar error a la corte inferior por haber calificado la acción de reivindicatoria de bienes muebles y negar que sea esta la acción entablada, dicho apelante tanto en el encabezamiento de la demanda original como de la demanda enmendada la titula de reivindicación de bienes muebles.

Este extremo, sin embargo, no parece que tenga influencia en la decisión de este caso, porque dadas las conclusiones a que hemos llegado, como más adelante veremos, no es el nombre de la acción lo que pueda ser más importante, sino la relación o el nexo jurídico que la demandante en una forma u otra trata de establecer con la demandada para hacer efectiva la pretensión de su demanda.

En junio 3 de 1921 la demandante, como arrendataria de ciertas fincas de la Central Vannina, dueña de una factoría para la fabricación de azúcar y que no es parte en este procedimiento, celebró con esta última un contrato sobre molienda y compraventa de cañas para la zafra 1921–22, estipulándose entre otras cláusulas las dos en que descansa toda la teoría de la demanda, y que literalmente dicen:

"9. La liquidación de azúcar que corresponde a cada colono será hecha semanalmente y la entrega de su importe se verificará una vez vendido el azúcar en la Bolsa de San Juan o cualquier otro sitio habilitado para las referidas ventas.

"Se entenderá que los azúcares que debe percibir el colono están vendidos a la central, y para este caso, el precio se establecerá tomando como base el precio de la venta o el promedio de las ventas de azúcar que hubiese realizado la central en el mercado de San Juan durante la semana correspondiente a la liquidación. Si no se vendiera en una semana regirá para la liquidación el precio que se obtuviere en la próxima venta que se verifique.

"10. Si algún colono deseare recibir su tanto por ciento en azúcar, lo avisará a la central, con una semana de anticipación y en este

caso se le entregará el azúcar en la factoría; debiendo concurrir el colono a recibirla; no dando dicho aviso, la central podrá hacer la venta del fruto.

     \*     \*     \*     \*     \*     \*     \* ''

Por otra parte, la misma Central Vannina en 8 de agosto de 1921 formalizó un contrato, que amplió en 22 de septiembre del mismo año, con la demandada, sobre préstamo refaccionario, obligándose la central a hacerle entrega para la venta de todos los azúcares que elaborase durante la zafra de 1921–1922, con excepción de cierta cantidad que se destinaba para atender las entregas a colonos por razón de sus contratos con dicha central, conviniéndose además que del precio de las ventas deduciría la demandada $3.50 por saco para aplicarlo a la amortización del préstamo concedido, recibiendo el restante dicha Central Vannina.

Durante los meses de marzo, abril y mayo de 1922 la demandante hizo varias entregas de cañas a la Central Vannina. No hay controversia de que la central recibió aviso por escrito de la demandante haciendo ésta su elección de recibir el tanto por ciento a que tenía derecho por cada quintal de caña, usando de la cláusula que le permitía la alternativa de recibir especie o su valor en dinero. La central entregó una parte del azúcar y dejó de hacerlo respecto a la cantidad de 302,306 libras, de las que alega el apelante que se apropió la demandada y reclama de ésta su devolución o en otro caso el precio obtenido por dicha azúcar, más el sobreprecio, *lucrum cessans,* que pudo obtenerse en su venta.

No existe controversia tampoco en cuanto a que la cantidad de la azúcar que se reclama fué elaborada por la Central Vannina, mezclada con otras cañas de colonos y de la central, o al menos no hay prueba en absoluto que su fabricación se hiciera separadamente de otras cañas no pertenecientes a la apelante. No hay duda, por consiguiente, que a medida que se producía el azúcar se almacenaba en el sitio destinado para su guarda en la central y el azúcar de la de-

mandante, producto de sus cañas, estaba confundido en los sacos de azúcar que formaban el lote general, sin marca, señal u otra distinción que indicara la individualización de los azúcares de la demandante. Bajo estas circunstancias no es dable pensar que la cláusula de opción para recibir dinero o especia, haciéndose de una vez la elección de recibir lo último, signifique o implique el derecho de dominio o propiedad de la demandante al percentaje de azúcar elaborado de acuerdo con el contrato como producto de sus cañas ni a ninguna parte del mismo mientras no se hiciera la entrega material por la Central Vannina a la demandante o se hubiera separado por él en sus almacenes el lote de sacos que habían de corresponderle por el contrato. Es verdad que en la compraventa de cosas muebles uno de los modos de efectuar su entrega es mediante el solo acuerdo o conformidad de los contratantes sin otra formalidad, si la cosa vendida no puede trasladarse a poder del comprador o ya por estar en su poder por otro concepto: artículo 1366 del Código Civil Revisado. Pero, aparte de que tal acuerdo o conformidad no podría tener efecto legal en este caso porque era indispensable individualizar la cantidad en especie que tenía que ser entregada por encontrarse confundida o en masa con la de otros interesados debido al proceso de elaboración de la materia prima, no podía sostenerse tampoco que hubiera tal conformidad de voluntades, pues expresamente se convino por la cláusula décima arriba transcrita que la tradición o entrega material se efectuaría en la factoría, debiendo concurrir el colono o recibirla.

En relación con la naturaleza y compraventa de ciertas cosas muebles, la jurisprudencia americana tiene declarado, y que consideramos de aplicación, lo siguiente:

"En caso de un contrato para la venta de un número específico de toneladas de heno que habían de ser sacadas de una estiba o de un granero que contenía mayor cantidad, se ha resuelto frecuentemente que no pasa título alguno al comprador antes de segregarse

y aplicarse al contrato el heno que ha de llevar el comprador. Igual cosa se ha resuelto con respecto a la venta de cierto número de estibas (*cords*) de madera dura que habían de ser tomadas de un montón en que había madera dura y madera suave; de leña que había de ser tomada de un montón conteniendo mayor cantidad; de cierto número de libras de jamón que habían de ser sacadas de mayor cantidad; de cierto número de pacas de algodón de determinado peso que habían de ser tomadas de una mayor cantidad en masa o de una cosecha en estado de crecimiento; de cierto número de libras de lana que habían de ser tomadas de mayor cantidad; de cierto número de ruedas que formaban parte de una cantidad mayor; de cierta cantidad de aceite que había de sacarse de una cisterna conteniendo una mayor cantidad; y de determinado número de ladrillos que habían de ser sacados de un horno que contenía un número mayor.'' 24 R. C. L. 28.

La apelante, de una manera tentativa, ha tratado de sostener que el azúcar reclamado constituía un depósito que guardaba la central. Como argumentación ni siquiera puede deducirse del convenio y en cuanto a la prueba nada existe en tal sentido.

Ni de los hechos ni de las cuestiones legales que de ellos surgen hemos encontrado que la corte inferior cometiera ningún error, y asimismo tampoco estuvo equivocada en la admisión del contrato de préstamo y refacción que produjo la demandada, pues era congruente con una de sus alegaciones de defensa, ya que realizada por la Central Vannina la entrega material a la demandada de un lote de sacos de azúcar sin demostrarse que una parte de ellos pertenecía a la demandante por habérsele entregado anteriormente o hecha la separación debida, la prueba era pertinente toda vez que por la tradición del azúcar la demandada adquiría, en virtud de dicho contrato de refacción, el dominio de los mismos sin responsabilidad alguna que pudiera exigirle la demandante, y quien en su consecuencia carecía de razón derecha para la institución de este litigio.

Por lo expuesto *debe confirmarse la sentencia apelada.*