Juan A. Monagas, demandante y apelante, *v.* Central Eureka, Inc., demandada y apelada.

No. 4778.—*Sometido:* Diciembre 5, 1930. *Resuelto:* Febrero 5, 1931.

*José Sabater,* abogado del apelante; *Oscar Souffront,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este pleito versa sobre incumplimiento de contrato. La demanda contenía dos causas de acción. Bajo la primera, el demandante alegó el otorgamiento, en Nueva York, de un contrato de refacción agrícola y de venta de caña producida por la "Hacienda Belvedere" en virtud del cual la demandada, Central Eureka, Inc., convino en adelantar al demandante la suma de $12,400 en los varios períodos consignados en la demanda.

El demandante, Juan A. Monagas, así decía la demanda, también vendió a la demandada toda la caña de azúcar que produjeran las cosechas de 1925, 1926 y 1927, al mismo precio y bajo las mismas condiciones convenidas entre la central y la firma de "Monagas y Vidal" para la cosecha de 1924.

Las partes igualmente convinieron en que dicho contrato se formalizara por escrito, y que incluyera todos los particulares del contrato de "Monagas y Vidal", de acuerdo con

la ley de refacción agrícola. Este convenio sobre el otorgamiento de un contrato más formal entre las partes nunca se efectuó. Después de especificar algunas de las condiciones del contrato celebrado con "Monagas y Vidal", el demandante alegó que dicho contrato de refacción agrícola había sido infringido por la demandada, toda vez que ésta se negaba a recibir caña producida en la zafra de 1925; porque la demandada, "con el fin de descongestionar el recibo y entrega de todas sus cañas, por medio de su Presidente don Mateo Fajardo impuso al demandante que era necesario vender parte de las cañas de la Hacienda Belvedere a otra central y dicho señor Fajardo en representación de la demandada hizo arreglos con la South Porto Rico Sugar Company para que este demandante entregara a esta última corporación azucarera, con la intervención de la demandada, tres mil toneladas de la totalidad de las cañas vendidas por el demandante a la demandada y sembradas y listas para su entrega en la Hacienda Belvedere."

La South Porto Rico Sugar Company, así se alegaba, no aceptó la entrega de tres mil toneladas, sino que exigió que le fueran vendidas seis mil; en otras palabras, tres mil para la zafra de 1925 y otras tres mil para la de 1926, y que en efecto el demandante, autorizado por la demandada, vendió a la South Porto Rico Sugar Company dichas seis mil toneladas de caña, que fueron entregadas en los desvíos "Borinquen" y "Franqui" de Cabo Rojo; que la demandada, por mediación de su Presidente, don Mateo Fajardo, ordenó al demandante que continuara entregando las cañas a la South Porto Rico Sugar Company hasta que ésta se negara a recibir más, y que el demandante (para la zafra de 1924–1925) en realidad entregó 7,020 toneladas de caña; que la demandada continuó adelantándole dinero al demandante; que éste también continuó entregándole la caña a la demandada.

El incumplimiento del contrato consiste en el hecho alegado de que cierta cantidad de caña perteneciente al deman-

dante jamás fué entregada o molida por la demandada en vista de que esta última nunca suministró el material necesario para permitir al demandante hacer las entregas necesarias, y ello, a pesar de todas las súplicas del demandante para que la demandada trasladara a su molino toda la caña producida y que hubiera sido entregada si la demandada hubiese suministrado el material necesario.

Existen otras alegaciones en la demanda al efecto de que por mediación de don Mateo Fajardo, se indujo al demandante a creer, o a algo similar, que la caña producida a fines de la zafra podía ser o sería molida por la Central Rufina, pero la Central Rufina se negó a recibir dicha caña. Por razón de la supuesta falta de la demandada de recibir, o de tomar posesión de la caña del demandante, éste alegaba en partidas detalladas haber sufrido pérdidas ascendentes a $15,011.98.

De la demanda aparece suficientemente que las partes convinieron en que el demandante debía entregar toda su caña o cualquier parte de ella en el desvío perteneciente a la demandada, conocido con el nombre de "desvío de Cabo Rojo".

La segunda causa de acción solicitaba la corrección de ciertas partidas en las cuentas o liquidaciones rendidas por la demandada al demandante, y se sostenía que el importe de tales cuentas debía reducirse en la suma de $1,073.94.

En resumen, la teoría de la demanda es que la demandada estaba en la obligación de moler toda la caña producida por la Hacienda Belvedere, y que el demandante no pudo entregar toda su caña porque la demandada no suministró los medios de transporte necesarios, y que, por tanto, el demandante sufrió daños y perjuicios. La demandada presentó una excepción previa y al ser declarada sin lugar presentó una contrademanda. La Corte de Distrito de Mayagüez dictó sentencia en contra del demandante y a favor de la demandada en la contrademanda con ligeros cambios. Esa corte en su opinión caracterizó el contrato como de refacción agrícola,

y expuso el deber de Monagas de entregar la caña a la central de conformidad con lo especificado en el contrato, "quedando por lo tanto las cañas gravadas por el montante de las sumas que fuera recibiendo el demandante de la demandada". La corte entonces llegó a la conclusión de que a virtud de la petición de Monagas mismo, en diciembre de 1924, la Central Eureka, Inc., lo relevó de su obligación de entregar la caña de la zafra correspondiente a los años 1925 y 1926, de acuerdo con la siguiente carta fechada el 27 de diciembre de 1924, enviada por la Central Eureka, Inc., al Sr. Monagas:

"Sr. Juan A. Monagas, Mayagüez. Muy señor nuestro y amigo: Teniendo en cuenta las razones expuestas por Ud. no hay inconveniente en relevarle como le relevamos por medio de la presente del compromiso de entregarnos 3,000 o más toneladas de cañas de las que produzca la hacienda Belvedere durante la cosecha de 1925 y 1926, pudiendo Ud. por tanto contratar para la molienda de esta caña con cualquiera otra central. De Ud. atentamente, Central Eureka Inc. M. Fajardo, Presidente."

La corte entonces declaró que Monagas utilizó esta carta para obtener un contrato con la South Porto Rico Sugar Company con respecto a la misma caña que había sido contratada para ser molida en la Central Eureka, habiendo entregado a la South Porto Rico Sugar Company para la cosecha de 1925 más de 7,000 toneladas de caña y para la de 1926, más de 6,500 toneladas de caña, o, en otras palabras, casi el total de la caña producida por la Hacienda Belvedere. La corte también declaró que era más conveniente para Monagas enviar su caña a la South Porto Rico Sugar Company que a la Central Eureka, entre otras, por las siguientes razones: Porque los desvíos Franqui y Borinquen en los cuales podía pesar las cañas para la South Porto Rico Sugar Company se encontraban más cerca de la Hacienda Belvedere y más accesibles que el desvío de la estación de ferrocarril de Cabo Rojo, donde tenía que pesar las cañas que debían ser entregadas a la Central Eureka; y porque la tabla de liquidación de sucrosa del contrato del señor Monagas con la South Porto

Rico Sugar Company resultaba más beneficiosa al señor Monagas que aquélla bajo la cual efectuó su contrato con la Central Eureka. Asimismo dió por probado la corte, y esto desde nuestro punto de vista es muy importante, que la demandada tenía al empezar la zafra de 1925 en el desvío de Cabo Rojo un pesador de cañas para recibir las que le entregara el Sr. Monagas, pesador que nunca se negó a recibir cañas al demandante ni éste notificó a dicho pesador ni a la Central Eureka la necesidad de entregar más cañas de las pocas que había entregado. Tampoco, según dice la corte, notificó el demandante a la demandada, ni puso en el desvío de Cabo Rojo a disposición de la demandada ninguna otra caña que la que voluntariamente quiso llevar, y que durante la zafra de 1925, ascendió a poco más de setecientas toneladas. La corte entonces declaró que desde el día 27 de diciembre de 1924, en que la central escribió a Monagas, a solicitud de éste la carta anteriormente transcrita, y con motivo de los actos posteriores de las partes y su conducta en relación con el objeto del contrato, ambas partes lo dieron por rescindido, especialmente el Sr. Monagas, cuyas actuaciones no podían armonizarse bajo ningún concepto con su alegada intención de dar cumplimiento al contrato aludido.

Resolvió la corte que la Central Eureka siempre estuvo dispuesta a aceptar cualquier caña del demandante, y que si éste dejó de entregarla se debió, bien a su propia negligencia o a falta de deseo de hacerlo así, y especialmente insistió en que si Monagas hubiese activado la entrega de su caña durante los primeros meses de la cosecha, no habría tenido dificultades; que tanto la Central Eureka, Inc., como la South Porto Rico Sugar Company estaban en condiciones de aceptar y hubiesen aceptado cualquier cantidad de caña que fuera entregada a una o a otra por Monagas. La corte también declaró que Monagas jamás presentó objeción alguna a las liquidaciones que le fueron presentadas por la Central Eureka hasta el 22 de febrero de 1927, cuando por primera vez

Monagas escribió a la compañía impugnando ciertas partidas. La corte también llegó a la conclusión de que no era la Central Eureka la que exigió de Monagas que celebrara el contrato con la South Porto Rico Sugar Company, toda vez que la prueba documental no sostiene esa contención, y además porque se demostró que la Central Eureka nunca recibió beneficio alguno del contrato con motivo de la entrega de la caña a la South Porto Rico Sugar Company, y que fué el Sr. Monagas quien recibió tal beneficio.

En apelación, a principios de su alegato, el apelante ataca la conclusión que hemos citado, de que la caña del demandante estaba sujeta a un gravamen a favor de la demandada. El apelante sostiene que la caña fué vendida totalmente por Monagas a la Central Eureka, y, por tanto, no podía haber tal cosa como un gravamen sobre bienes pertenecientes a una misma persona. En otras palabras, la teoría es que la venta efectuada en 1924 era un contrato ejecutado y consumado y que el título de la caña pasó de Monagas a la Central Eureka. Aunque tal vez no expresada exactamente en estas palabras, podría decirse que la idea del demandante es que todo lo que la central hizo posteriormente fué relevarse a sí misma, y que cualquier actuación de Monagas lo era como agente de la demandada.

■■ En este caso, la teoría de que el título a la caña pasó en el momento de otorgarse el contrato no puede sostenerse. El artículo 1348 del Código Civil dispone: "Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente". En otras palabras, la entrega es ordinariamente esencial.

El apelante hace algún hincapié en el artículo 1353 del Código Civil, como sigue:

"La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado."

Una lectura de este artículo demuestra que lo que el legislador tuvo en mente es que surge un contrato con obligaciones mutuas aunque no haya una entrega efectiva, pero en forma alguna exime a un vendedor del deber impuéstole por la ley de entregar los objetos expresados en el contrato. En el caso de autos, el título a la cosecha en crecimiento no pasó hasta su entrega efectiva, aunque bajo el artículo 1353 el vendedor está obligado a entregar, y el comprador a aceptar, cualesquier objetos ofrecidos en debida forma. Es evidente que en su origen la Central Eureka deseaba obtener toda la caña que Monagas producía, y que éste interesaba entregarla a la Central Eureka. En realidad, este contrato fué probablemente más bien una promesa de vender y comprar, regida por el inciso primero del artículo 1354 del Código Civil, que lee así:

"La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato."

Según demuestra la jurisprudencia, regía la intención de las partes, y no hallamos en los autos la más ligera intención de parte de los otorgantes de que el título a la cosecha en desarrollo pasara inmediatamente a la Central Eureka. Es lógico que, de ordinario, ninguna central celebraría normalmente semejante contrato.

Las anteriores son consideraciones generales, pero el contrato en este caso exigía la entrega a la central en cierto y determinado sitio, y la prueba no demuestra que se hiciera tal entrega. No hubo entrega, y la única prueba de una oferta de entrega o de un ofrecimiento de la cosa, fué una supuesta carta de Monagas dirigida a la Central Eureka, cuyo recibo se negaba. No hallamos en la prueba una entrega u ofrecimiento de entrega tales que hubiesen consumado el contrato. Nos sentimos obligados a resolver que el título a las cosechas en estado de crecimiento no pasó en diciembre de 1924, cuando el contrato fué celebrado. Esta falta de entrega o de

hacer el debido ofrecimiento de la cosa, es por sí sola decisiva en el caso. Según demuestran los autos, creemos, a juzgar por la declaración de Fajardo, que Monagas pudo haber llevado las cañas al desvío y haberlas dejado allí; que los carros o vagones de la demandada estaban expeditos más o menos a medida que surgía la necesidad de transportar. Además, no importa cómo se le designara, la idea de las partes fué, según revelan los autos, celebrar un contrato de refacción agrícola, a ser interpretado en la forma que tales contratos generalmente lo son.

Lo que hemos dicho anteriormente puede considerarse que está implícito o aun directamente expresado en la opinión de la corte inferior. Empero, no vacilamos en sostener las otras declaraciones y conclusiones generales de dicha corte.

La batalla en la corte giró principalmente sobre si el contrato celebrado en diciembre 24 no había sido rescindido. Hubo gran discusión en los alegatos respecto a si fué Fajardo o Monagas quien inició o cerró las negociaciones con la South Porto Rico Sugar Company. Creemos que la corte, que oyó toda la prueba, estaba justificada en creer que fué Monagas quien, en efecto legal, solicitó se le relevara del contrato. Entonces no importaría que la sugestión partiera originalmente de Fajardo. Por otra parte, aun si Fajardo lo hubiera fraguado todo para la consumación del contrato con la South Porto Rico Sugar Company y lo hubiera hecho sola y exclusivamente para relevarse a sí mismo, sin embargo, Monagas aceptó como principal todas las actuaciones de Fajardo. El análisis hecho por la corte demuestra esto suficientemente, y otras cosas que aparecen en los autos lo hacen claro. No trataremos de transcribir la prueba, pero creemos que la conducta y la conversación de las partes al convenir que la cosecha de 1926-1927 no fuera molida por la Central Eureka, demostraron que las partes consideraron que la Central estaba totalmente relevada de moler en los años anteriores. La corte inferior ha dado suficiente énfasis al hecho de que las

actuaciones de Monagas al entregar la caña a la South Porto Rico Sugar Company a su antojo, al firmar el contrato con la South Porto Rico Sugar Company y al dejar de objetar las cuentas, fueron todos indicios de que las partes quedaron relevadas, por lo menos durante dos años, del contrato de diciembre, 1924.

El contrato no quedó totalmente rescindido, toda vez que la Central Eureka estaba obligada a efectuar anticipos, pero las partes quedaron relevadas de entregar o aceptar cañas.

Incidentalmente podemos decir que aun si Monagas estuviera acertado al sostener que la distancia de medio kilómetro no habría importado mucho en el transporte de la caña y que fácilmente hubiese podido llevar los vagones al desvío de Cabo Rojo, no obstante, la otra prueba tiende claramente a demostrar que el número de viajes que los carros de Monagas hubieran podido dar se habrían reducido. Las otras conclusiones a que llegó la corte subsistirían de todos modos.

Hemos examinado la prueba y los alegatos de las partes, y estamos enteramente convencidos de que Monagas mismo creyó que estaba en libertad de entregar la caña según le pluguiera.

██ Finalmente, podemos decir a este respecto que dudamos muy seriamente que la primera narración adujese una causa de acción. No creemos que el decir que la demandada dejó de transportar las cañas del demandante a pesar de los frecuentes requerimientos hechos con tal fin fué substituto o sucedáneo de la que consideramos una alegación necesaria, a saber, que el demandante hizo el debido ofrecimiento de entrega, tal vez describiendo los actos que constituyeron tal ofrecimiento.

Estamos enteramente convencidos de que la segunda causa de acción estaba sujeta a excepción. Solicitar que la cuenta existente entre las partes fuese reducida, cuando la central no había demandado por tal cuenta, era una cuestión enteramente académica.

Estas consideraciones resuelven los tres primeros señalamientos de error. El cuarto señalamiento simplemente dice: ''La corte inferior erró al declarar con lugar la contrademanda''. Este es un señalamiento insuficiente. La cuestión envuelta, en grado sumo fué un conflicto de prueba, y el apelante no nos convence de que se cometiera ningún error fundamental.

La corte estuvo justificada al imponer las costas al apelante.

■ Sin hacer un señalamiento de error el apelante se queja de que la corte dejara de radicar sus conclusiones de hecho junto con su sentencia, de conformidad con el artículo 227 del Código de Enjuiciamiento Civil, tal como fué enmendado. Si fué o no una mera omisión del juez el dejar de archivar sus conclusiones en unión de la sentencia, no dudamos que en cualquier caso el juez puede, como lo hizo en este caso, tomarse un tiempo razonable después de dictar sentencia para archivar tal relación de hechos, especialmente dentro del término.

*Debe confirmarse la sentencia apelada.*