CENTRAL VICTORIA, INC., demandante y apelante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 8920.—*Sometido:* Junio 8, 1944. *Resuelto:* Julio 3, 1944.

*Cayetano Coll y Cuchí y Cayetano Coll Pujol,* abogados de la apelante; *Hon. Procurador General Interino Jesús A. González* y *A. E. Franco Cabrero, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La sección 1 de la Ley número 267, Leyes de Puerto Rico, 1938 (pág. 516), que entró en vigor el 15 de mayo de 1938, imponía un impuesto de rentas internas "de un cuarto ($\frac{1}{4}$) de centavo por cada galón de miel que se fabrique, venda, consuma, se introduzca o de otro modo se disponga para el consumo en Puerto Rico . . .".

Esta es una apelación contra sentencia de la corte de distrito desestimando la demanda de la actora para que se le reembolsara la suma de $1,538.12 que el Tesorero le cobró, alegando que la demandante la debía, en virtud de dicha ley, por la venta de más de 600,000 galones de miel.

Las mieles en cuestión ya habían sido fabricadas cuando entró a regir la Ley número 267 el 15 de mayo de 1938. Sin embargo, el Tesorero alegó con éxito ante la corte inferior que dichas mieles se vendieron después del 15 de mayo de 1938, y que dichos impuestos habían sido por tanto correctamente cobrados.

Este caso se rige por los términos de un contrato escrito otorgado por la demandante, como vendedora, y otra corporación, como compradora, que dice en parte como sigue:

"Sección I. Cantidad. La Vendedora conviene en vender y entregar a la Compradora, y ésta conviene en comprar y pagar a la Vendedora a los precios y de acuerdo con los términos más adelante especificados, toda la producción de mieles finales de la Vendedora en sus factorías conocidas como Central 'Carmen', Central 'San Vicente', Central 'Victoria' y Central 'Coloso', de la zafra de 1938,

·exceptuando una reducción hasta el veinte (20) por ciento de la pro·ducción de mieles así usadas o vendidas por estas centrales para consumo local en la Isla de Puerto Rico.

"Sección II.   Calidad.   La calidad de la miel será tal como sale de la centrífuga libre de adulteración, y sin que se le añada agua, vapor, cal, o cualquier sustancia extraña.   Las mieles tienen una garantía que no será menor de 43 Baume u 82 Brix.

"Sección III.   Entrega.   La entrega será hecha en los barcos que ·suministrará la Compradora, el primer cargamento a empezar cargando en San Juan y/o Mayagüez, Puerto Rico, y terminando en cualquiera de dichos puertos a opción de la Vendedora, durante marzo de 1938, y los subsiguientes cargamentos en abril, mayo y junio de 1938, con 15 días de aviso anticipado por parte de la Vendedora.   En caso de que la Compradora no disponga de los vapores para recibir las mieles dentro del tiempo arriba especificado, se hará el pago a la ·Compradora por los cargamentos mencionados contra depósito por la Vendedora del correspondiente recibo de depósito . . .

Sección IV.   Precio.   Cuatro y un cuarto (4¼ centavos) centavos por cada galón de vino americano F.O.B. barco en San Juan y/o Mayagüez.   En caso de que la miel entregada demuestre estar bajo o sobre 52 Azúcares Totales por el Método Clerget, entonces el precio será aumentado o reducido, según fuere el caso, en tal proporción del precio fijado de 4¼ centavos como la que tenga el exceso o la reducción en grado o fracciones de grado, en relación con 52. Se sobreentiende que F.O.B. quiere decir las mieles entregadas a bordo del barco.   Cualquier gasto de embarque, almacénaje o contribuciones o gastos incidentales al embarque de estas mieles en el vapor será por cuenta de la Compradora.

"Sección V.   Análisis.   Una muestra representativa al momento ·de bombear el cargamento será tomada de la tubería del muelle en Puerto Rico.   Si la Compradora no tiene disponibles los barcos para recibir las mieles dentro del tiempo arriba fijado, las muestras repre· sentativas de las mieles depositadas en los tanques de José Romaguera e Hijos en San Juan y/o en Mayagüez, serán tomadas por los representantes de la Compradora y Vendedora.   En cualquiera de estos casos, estas muestras serán selladas cuidadosamente y divididas en tres grupos, uno a enviarse a la Compradora, uno a la Vendedora y el restante a la New York Sugar Trade Laboratory Inc.   El promedio de los dos análisis más cercanos será tomado como el análisis final.

"  *         *         *         *         *         *         *

"Sección VII. Seguro Marítimo. La Compradora se hará cargo del mismo, la prima a ser pagada por la Compradora.

"Sección VIII. Pagos. Serán efectuados como sigue: Noventa y cinco (95%) por ciento contra documentos de embarque total, o la entrega del correspondiente Recibo de Depósito (en caso de que la Compradora no pueda suministrar el barco a tiempo), y el balance tan pronto como el análisis final haya sido determinado y en ningún caso después de transcurridos treinta días desde la fecha en que se ha enviado cada cargamento o que se han tomado las muestras en los tanques de Romaguera."

La demandante probó sin duda alguna que las mieles envueltas en este caso se fabricaron antes del día 15 de mayo de 1938. Pero no podemos aceptar su contención de que la venta de las mismas también se había consumado totalmente antes de dicha fecha. Por el contrario, es inevitable la conclusión de que la venta propiamente dicha, bajo un contrato como éste en que se vende parte de toda la producción de mieles de una central durante una temporada futura, tiene lugar al entregársele las mieles de que se trata al comprador o a su representante. Y aquí tales entregas se hicieron en fechas posteriores al 15 de mayo de 1938. Las ventas, como transacciones sujetas a contribución, tuvieron lugar por lo tanto, después de la vigencia de la Ley número 267 imponiendo un tributo a la venta de mieles.

Si conviniésemos con la apelante en que, para fines contributivos, la venta de las mieles aquí envueltas tuvo lugar en la fecha en que firmó el contrato para vender parte de sus mieles cuando las fabricase en una fecha posterior, exigiría que revocáramos las opiniones de esta corte al efecto de que la transacción sujeta a contribución clasificada como una "venta" tiene lugar bajo las circunstancias de este caso al entregársele la mercancía al comprador o a su representante. (*López y Morán* v. *Sobs. de Ezquiaga,* 34 D.P.R. 79; *West India Oil Co. (P.R.)* v. *Tesorero,* 54 D.P.R. 732; *Monagas* v. *Central Eureka, Inc.,* 41 D.P.R. 803). No vemos razón alguna para revocar dichos casos, y en vista del hecho de que se admite que la entrega al comprador de conformidad con

el contrato aquí envuelto tuvo lugar después de la vigencia de la ley, se impuso correctamente la contribución sobre dichas transacciones como ventas.

Sin examinar la cuestión de si el contrato escrito podía variarse oralmente, nada encontramos en el récord que justifique la contención de la apelante de que, aun asumiendo la regla como la hemos expuesto, se hicieron arreglos orales a virtud de los cuales las entregas ya se habían efectuado por la vendedora a una tercera persona que representaba a la compradora, con anterioridad a la fecha de la vigencia de la ley contributiva.

*La sentencia de la corte de distrito será confirmada.*